# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIA DEVLIN and JULIE THUMM, individually and on behalf of all others similarly situated, | Civil Action No. 2:15-cv-04976-NIQA |
| Plaintiffs, | Judge Nitza I. Quinones Alejandro |
| v. | |
| FERRANDINO & SON, INC., | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
## APPROVAL OF THE SETTLEMENT AGREEMENT

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ......................................................................................... 1

II.    PROCEDURAL HISTORY............................................................................ 4

III.   THE TERMS OF THE SETTLEMENT AGREEMENT ................................... 5

     A.    The Settlement Class.......................................................................... 5

     B.    Distribution Of The Gross Settlement Amount And Release Of Claims .............. 6

     C.    Notice To Potential Settlement Class Members ................................... 11

IV.   DISCUSSION ........................................................................................... 13

     A.    Applicable Legal Standard................................................................ 13

           1.    Legal Standard for Approval of FLSA Settlements................................ 13

           2.    Legal Standard for Approval of Rule 23 Class Action Settlements ........ 14

     B.    The Terms of the Proposed Settlement Are Fair and Reasonable When Considering the Uncertainty of Continuing To Litigate This Matter .................. 16

     C.    The Settlement Agreement Is The Product of Informed, Non-Collusive Negotiation And Does Not Present Any Grounds To Question Its Fairness........ 18

     D.    The Additional Service Awards To Named Plaintiffs Are Justified And Should Be Approved.......................................................................... 20

     E.    The Proposed Settlement Furthers the Purpose of the FLSA .............................. 22

     F.    The Court Should Provisionally Certify The Pennsylvania Settlement Class Under Fed. R. Civ. P. 23............................................................ 23

           1.    The Pennsylvania Settlement Class Is Sufficiently Numerous................. 25

           2.    The Pennsylvania Settlement Class Seeks Resolution of Common Questions................................................................................ 25

           3.    The Claims Of The Named Plaintiffs Are Typical Of the Pennsylvania Settlement Class................................................................ 25

           4.    Class Counsel And Plaintiffs Meet The Adequacy Requirements Of The Pennsylvania Settlement Class ........................................... 26

           5.    The State Settlement Class Satisfies The Predominance And Superiority Requirements of FED. R. CIV. P. 23(b)(3) .................................. 26

G.    The Proposed Notices Provide Adequate Notice To The Settlement Class Members And Satisfy Due Process........................................................................ 27

H.    The Proposed Implementation Schedule ............................................................. 28

V.    CONCLUSION......................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................24

*In re Baby Products Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) .....................................................................10

*Bozak v. FedEx Ground Package Sys., Inc.*,
    No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014) ................27

*Bredbenner v. Liberty Travel, Inc.*,
    No. 09-cv-905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) .................13, 22

*Brooklyn Sav. Bank v. O'Neil*,
    324 U.S. 697 (1945) ................................................................................23

*Brown v. TrueBlue, Inc.*,
    No. 10–514, 2013 WL 5408575 (M.D. Pa. Sept. 25, 2013) ...............14, 22

*Brumley v. Camin Cargo Control, Inc.*,
    No. 08-cv-1798, 2012 WL 1019337 (D.N.J. Mar. 26, 2012) ...................13

*In re Certainteed Fiber Cement Siding Litig.*,
    303 F.R.D. 199 (E.D. Pa. 2014) ...............................................................18

*In re Chickie's & Pete's Wage and Hour Litig.*,
    No. 12-6820, 2014 WL 911718 (E.D. Pa. Mar. 7, 2014) ............13, 14, 23

*Collier v. Montgomery Cnty. Hous. Auth.*,
    192 F.R.D. 176 (E.D. Pa. 2000) ...............................................................24

*In re Constar Int'l, Inc. Sec. Litig.*,
    585 F.3d 774 (3d Cir. 2009) .....................................................................24

*Craig v. Rite Aid Corp.*,
    No. 4:08-cv-2317, 2013 WL 84928 (M.D. Pa. Jan. 7, 2013), *appeal dismissed*
    (3d Cir. Feb. 20, 2013) .......................................................................18, 21

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000) ...............................................................20

*Deitz v. Budget Renovations & Roofing, Inc.*,
    No. 4:12–cv–0718, 2013 WL 2338496 (M.D. Pa. May 29, 2013) ...........18

*Dino v. Pennsylvania*,
No. 08–1493, 2013 WL 4041681 (M.D. Pa. Aug. 8, 2013) ..................................................14

*Fry v. Hayt & Landau*,
198 F.R.D. 461 (E.D. Pa. 2000) ........................................................................24, 25, 26

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ...................................................................................14, 15, 24

*Gen. Tel. Co. of S.W. v. Falcon*,
457 U.S. 147 (1982) .........................................................................................................26

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) .............................................................................................14

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*,
No. 06-3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009) ........................................10, 22

*Baby Neal ex rel. Kanter v. Casey*,
43 F.3d 48 (3d Cir. 1994) .................................................................................................23

*Klingensmith v. BP Prods. N. Amer., Inc.*,
No. 07-cv-1065, 2008 WL 4360965 (W.D. Pa. Sept. 24, 2008)........................................15

*Knepper v. Rite Aid Corp.*,
675 F.3d 249 (3d Cir. 2012) .............................................................................................27

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) ...............................................................................15

*Lynn's Food Stores. Inc. v. U.S.*,
679 F.2d 1350 (11th Cir. 1982) ...................................................................................13, 14

*Martin v. Foster Wheeler Energy Corp.*,
No. 3:06-cv-0878, 2008 WL 906472 (M.D. Pa. Mar. 31, 2008) ......................................20

*In re Mid-Atl. Toyota Antitrust Litig.*,
564 F. Supp. 1379 (D. Md. 1983) .....................................................................................15

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) .........................................................................................................27

*Reed v. Gen. Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) ...........................................................................................19

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003) ...............................................................................19

*Sakalas v. Wilkes Barre Hosp. Co.*,
No. 3:11-cv-0546, 2014 WL 1871919 (M.D. Pa. May 8, 2014) ...........................................22

*Sand v. Greenberg*,
No. 08-cv-7840, 2011 WL 7842602 (S.D.N.Y. Oct. 6, 2011) .................................................21

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
157 F. Supp. 2d 561 (E.D. Pa. 2001) .....................................................................................18

*Singleton v. First Student Management LLC*,
No. 13-cv-1744, 2014 WL 3865853 (D.N.J. Aug. 6, 2014) ...................................................14

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001)...................................................................................................25

*UAW v. Gen. Motors Corp.*,
No. 05 Civ. 73991, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006)........................................19

*Wade v. Werner Trucking Co.*,
No. 10 Civ. 270, 2014 WL 2535226 (S.D. Ohio June 5, 2014).............................................27

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
726 F.2d 956 (3d Cir. 1983)...................................................................................................15

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)...................................................................................................24

*Weiss v. York Hosp.*,
745 F.2d 786 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985)........................................24

*Wetzel v. Liberty Mut. Ins. Co.*,
508 F.2d 239 (3d Cir. 1975), *cert. denied*, 421 U.S. 1011 (1975).........................................23

*Young v. Tri Cnty. Sec. Agency, Inc.*,
13-cv-5971, 2014 WL 1806881 (E.D. Pa. May 7, 2014).................................................21, 23

## Statutes

29 U.S.C. § 202...................................................................................................................23

29 U.S.C. § 216(b) .......................................................................................................... *passim*

## Other Authorities

Fᴇᴅ. R. Cɪᴠ. P. 23 .............................................................................................................. *passim*

## I.   __INTRODUCTION__

This class and collective action wage and hour lawsuit against Defendant, Ferrandino & Sons, Inc. ("Ferrandino & Sons" or "Defendant") has been settled, and Plaintiffs, Maria Devlin and Julie Thumm, respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement.  As discussed herein, the proposed settlement is fair and reasonable and warrants this Court's approval. On September 3, 2015, Plaintiffs, Maria Devlin and Julie Thumm, filed this class and collective action, alleging that the Defendant failed to pay for all hours worked and overtime compensation, in violation of the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and Pennsylvania state laws.  More specifically, Plaintiffs allege that they and other Account Managers were misclassified as exempt from the FLSA and Pennsylvania state law, and were not paid for all hours worked or overtime. (ECF No. 1.).  On January 5, 2015, Defendant reclassified all of its Account Managers and began paying them overtime.  Defendant did not, however, pay Account Managers any back wages owed.

Plaintiffs alleged that, in addition to their regularly scheduled 40 hour week, Account Managers routinely worked late and through their lunch periods, especially in the snow season, between November and April. In addition, many Account Managers also performed Project Work – additional shifts available in the evenings during which Account Managers responded to emergencies from Defendant's clients to which the Account Managers were not regularly assigned. Defendant paid its Account Managers $25 per hour for Project Work, regardless of the Account Managers' salary. Finally, many Account Managers performed On Call Overnight Shift Work, during which they were paid a flat rate regardless of the number of hours they actually worked. Plaintiffs alleged that Defendant failed to pay Account Managers any overtime for any of this work. Further, even after Defendant reclassified its Account Managers and began paying

1

them overtime premiums, Plaintiffs alleged that Defendant failed to include the Overnight Shift flat rate in the regular rate. Defendant vigorously contests its liability in this case.

The Parties agreed to engage in an Alternative Dispute Resolution ("ADR") process, which was approved by the Court.  Following the exchange of substantial informal discovery, extensive arm's-length settlement negotiations, and a full-day, in-person mediation session in Philadelphia, Pennsylvania before experienced mediator Mark Irvings, Esquire, the Parties were able to reach a class settlement of this matter.  *See* Declaration of Sarah R. Schalman-Bergen ("Schalman-Bergen Decl.") ¶ 14.  The terms of the Parties' settlement are set forth in a Settlement Agreement (the "Settlement Agreement" or "Agreement") (attached hereto as Ex. 1).

The Settlement includes a gross cash payment of One Million, Five Hundred Fifty Thousand Dollars and Zero Cents ($1,550,000.00) (the "Gross Settlement Amount"), excluding the employer's share of applicable FICA and FUTA payroll taxes. *See* Agreement ¶ 11(n). Every Eligible Class Member[1] will receive a Settlement Award, and none of the funds from the Gross Settlement Amount will revert to Defendant.  *Id.* ¶¶ 18(a)(iii).  Defendant will pay the Gross Settlement Amount in two separate payments, in August 2016 and January 2017.  Class Counsel has agreed that to delay receipt of attorneys' fees until the final payment, to ensure that Settlement Class Members receive their settlement awards as soon as possible.

In exchange, the Settlement Agreement contains a release of all FLSA and Pennsylvania state law wage and hour claims that were or could have been asserted in the Complaint based on the facts alleged for alleged unpaid wages, overtime compensation, liquidated or other damages

---

[1] Eligible Class Member means "all current or former employees of Defendant who performed work as Account Managers at any time between September 3, 2011 and January 5, 2015 and all current or former employees of Defendant who performed work as Account Managers and performed On Call Work during at least one workweek between January 5, 2015 and October 9, 2015." *Id.* ¶ 11(bb).  There are approximately 319 Settlement Class Members.

through the October 9, 2015 in weeks when the Eligible Class Member worked as an Account Manager.  No Eligible Class Member shall be deemed to release an FLSA claim unless they submit an Opt-In Consent Form.  *See* Agreement ¶ 12.  The releases will not become effective until Defendant makes payment of the full Gross Settlement Amount. *Id.* ¶ 19(b)(iv).

Plaintiffs' counsel believes that the negotiated Settlement Agreement provides an excellent settlement for the Plaintiffs and the Settlement Class, with respect to their claims for alleged unpaid wages and overtime arising from Defendant's alleged improper wage and hour practices at issue in this case.  *See* Schalman-Bergen Decl. ¶ 17.  The Gross Settlement Amount represents more than 100% of the unliquidated, unpaid overtime wages that Plaintiff calculated were owed to Settlement Class Members using a half time rate.  *Id.* ¶ 18.

Plaintiffs respectfully submit that this Motion should be granted because the proposed Settlement Agreement satisfies all of the criteria for preliminary approval under federal law and falls well within the range of reasonableness.  Accordingly, the Plaintiffs request that the Court issue an order: 1) granting preliminary approval of the proposed Settlement Agreement; 2) preliminarily certifying the state law claims as a FED. R. CIV. P. 23 class on behalf of the Pennsylvania Settlement Class and conditionally certifying the FLSA claims pursuant to 29 U.S.C. § 216(b); 3) preliminarily appointing Plaintiffs, Maria Devlin and Julie Thumm, as Representatives of the Pennsylvania Settlement Class; 4) preliminarily appointing Berger & Montague, P.C. and Willig, William & Davidson as Class Counsel for the State Settlement Class; 5) approving The Angeion Group as Settlement Administrator and preliminarily approving the costs of administration; 6) approving the plan of notice to the Settlement Class Members, including approving the Notice and Opt-In Consent Form attached to the Settlement

Agreement as Exhibits A and B; and 7) approving the proposed schedule and procedure for the final approval of this Settlement.  Defendant does not oppose this Motion.

## II.     **PROCEDURAL HISTORY**

On September 3, 2015, Plaintiffs Maria Devlin and Julie Thumm ("Plaintiffs") filed a class and collective action lawsuit against Ferrandino & Sons, Inc. in the United States District Court for the Eastern District of Pennsylvania alleging violations of the FLSA, the PMWA and Pennsylvania Common Law (unjust enrichment or *quantum meruit*).  After the Complaint was filed, the parties met and conferred, and agreed to engage in an alternative dispute resolution process ("ADR"). Accordingly, on October 19, 2015, the Parties filed a Stipulation Regarding ADR, and agreed to stay the case and participate in mediation. On October 19, 2015, the Court approved the Parties' proposed ADR Process and stayed the case through December 11, 2015. *See* Order (ECF No. 22).   The Parties engaged an experienced mediator in wage and hour matters, Mark Irvings, Esq from Boston, Massachusetts to serve as a neutral mediator. The mediation was scheduled for December 7, 2015 in Philadelphia, Pennsylvania.

In connection with the ADR process, the Parties agreed to execute a Protective Order and to exchange informal discovery so that they could engage in meaningful, good faith and informed settlement discussions.  Specifically, Defendant agreed to produce and did produce available electronic and hardcopy payroll records, timesheets, as well as policy documents. Plaintiffs and 26 Opt-In Plaintiffs produced any and all documents in their possession, other than pay stubs and checks, which reflected all weekly hours worked for Ferrandino & Sons. Further, prior to the mediation, the Parties exchanged mediations statements and engaged in pre-mediation meet and confer calls. During these calls Ferrandino & Sons requested additional time to consider the materials presented by Plaintiffs. Accordingly, the Parties agreed to reschedule the mediation to a later date.

4

On December 11, 2015, the Parties filed a Joint Status Report and Request for a Continuance of Stay in order to continue efforts to settle the matter through the ADR process. The Parties notified the Court that they rescheduled the mediation for January 27, 2016. *See* (E.C.F. No. 34). On December 15, 2015, the Court approved the Parties' Request for Continuance of Stay and stayed the case through February 1, 2016 and ordered the Parties to file a Joint Status Report on or before February 1, 2016. *See* Order (E.C.F. No. 35).

On January 27, 2016, the Parties participated in a full-day, in-person mediation session in Philadelphia, Pennsylvania, before experienced mediator Mark Irvings, Esquire.  In preparation for the mediation, the Parties each prepared and exchanged revised comprehensive damages analyses.  As a result of the mediation session and continued arm's-length negotiations between the Parties, the Parties have agreed to settle the Action in accord with the terms of the Settlement Agreement.

Accordingly, the Parties now present the Settlement Agreement to the Court for its approval.  The Settlement offers significant advantages over the continued prosecution of this case: Plaintiffs and the Settlement Class will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendant would assert various defenses to its liability.  Schalman-Bergen Decl. ¶ 17.  The Parties have spent considerable time negotiating and drafting the Settlement Agreement, which ensures that all members of the Settlement Class are provided with notice of the Settlement Agreement and its terms. *Id.*

## III.  THE TERMS OF THE SETTLEMENT AGREEMENT

### A.  The Settlement Class

The Settlement Agreement provides that the Settlement Class includes "all current or former employees of Defendant who performed work as Account Managers at any time between

September 3, 2011 and January 5, 2015 and all current or former employees of Defendant who performed work as Account Managers and performed On Call Work during at least one workweek between January 5, 2015 and October 9, 2015." *See* Agreement ¶ 11(bb).  In addition, the Settlement Agreement provides that the "Pennsylvania Settlement Class" means "all individuals in the Settlement Class unless removed from the Pennsylvania Settlement Class by either (a) timely opting out of the Settlement or (b) being identified by the Settlement Administrator as having his/her Notice of Settlement returned as undeliverable (and not subsequently delivered prior to the Notice Deadline following the Settlement Administrator's reasonable efforts)." *Id.* ¶ 11(t).

The Parties have agreed that, for settlement purposes only, the requisites for establishing collective action certification pursuant to 29 U.S.C. § 216(b) have been satisfied, and the State Settlement Class may be certified pursuant to Fed. R. Civ. P. 23.  *Id.* ¶ 13(a).  Notice of the settlement will be provided to the above-defined Settlement Class in the form of the proposed Settlement Notice ("Notice") attached to the Settlement Agreement as Exhibit A.  *Id.* ¶ 11(cc); Ex. A.  The Opt-In Consent Form, as attached to the Settlement Agreement as Exhibit B will also be sent to Settlement Class Members who have not already filed a consent to join with the Court. *Id.* ¶ 11(q); Ex. B.  Every Eligible Class Member will be paid a Settlement Award.  *Id.* ¶ 21.

**B.**     **Distribution Of The Gross Settlement Amount And Release Of Claims**

Pursuant to the Settlement Agreement, Defendant shall pay the Gross Settlement Amount (*i.e.*, $1,550,000.00) to the Settlement Administrator in two payments.  *Id.* ¶ 18. The First Payment, of no more than One Million Thirty Three Thousand and Three Hundred and Thirty Three Dollars and Zero Cents (1,033,333.00) will be wired to the Settlement Administrator on August 1, 2016. The Final Payment, which consists of Class Counsels' attorney's fees as approved by the Court, will be wired to the Settlement Administrator on January 2, 2017.  Upon

receipt by the Settlement Administrator, these funds shall be transferred immediately into a Qualified Settlement Fund. *Id.* The Qualified Settlement Fund will be administered by a Court-appointed Settlement Administrator, The Angeion Group, LLC ("Angeion"), an independent and highly experienced third-party claims administration company. *Id. ¶¶* 11(z).

The Gross Settlement Amount includes amounts to cover: (1) service awards to Named Plaintiffs, Maria Devlin and Julie Thumm, in the amount of $7,500.00 each for their efforts in bringing and prosecuting this matter and service awards to Opt-In Plaintiffs Jason Eisenberg, Michael Hagan, and Jenna Wynne in the amount of $1,000.00 each for their efforts in assisting Class Counsel during this matter; (2) the payment of attorneys' fees in the amount of up to one-third of the Gross Settlement Amount ($516,667.00), which will compensate Class Counsel for all work performed in the litigation as of the date of the Settlement Agreement, plus all work remaining to be performed, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the Action, plus the payment of out-of-pocket costs incurred by Class Counsel, which currently are $4,307.00; and (4) a maximum of $17,500.00 Dollars for the Settlement Administrator's costs of the settlement administration. *Id. ¶* 19(c). Class Counsel will file a separate Motion for Approval of Attorneys' Fees and Costs prior to the Court's final fairness hearing, as described in the proposed Implementation Schedule, *see infra* Section H.

Pursuant to the Settlement Agreement, if the Court approves the amounts set forth above, the Net Settlement Amount would be approximately $993,526.00. Awards to Eligible Class Members will be made from the Net Settlement Amount. Specifically, all Eligible Class Members will receive a *pro rata* share of the Net Settlement Amount based the total number of

weeks that the Eligible Class Member worked for Ferrandino as an Account Manager between September 3, 2011 and October 9, 2015 (the "Class Period").

The amount of $250 per Eligible Class Member will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Eligible Class Members so that each Eligible Class Member receives at least $250 in exchange for their release in this Settlement Agreement.  Eligible Class Members will be awarded the following settlement shares for each workweek during the Class Period:

| Type of Workweek | Number of Settlement Shares |
|---|---|
| Workweek where Eligible Class Member did not perform Project Work or On Call Work | 1 |
| Workweek where Eligible Class Member performed Project Work | 5 |
| Workweek where Eligible Class Member performed On Call Work | 25 |
| Workweek where Eligible Class Member performed Project Work **_and_** On Call Work | 35 |

Each eligible week above shall receive the highest total number of applicable settlement shares. No workweek may be credited with more than one category of settlement shares described above. Agreement ¶ 21.

The total number of settlement shares for all Eligible Class Members will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure.  That figure will then be multiplied by each Eligible Class Member's number of settlement shares to determine the Eligible Class Member's Settlement Award, unless the Eligible Class Member did not previously opt in to the case or timely return an Opt-In Consent Form, in which case the Settlement Award will be reduced by fifty percent (50%).  The amount of the 50% reduction applicable to all Eligible Class Members who did not previously opt in to the case or who do not timely return an Opt-In Consent Form will be divided on a *pro rata* basis

8

among all Eligible Class Members who previously opted in to the case or who timely return an Opt-In Consent Form. All Settlement Award determinations shall be based on Defendant's previously produced payroll and timekeeping data for Settlement Class Members. *Id.* ¶ 21.

Fifty percent (50%) of each Settlement Award to Eligible Class Members shall be treated as back wages, and accordingly, on each Settlement Award, the Settlement Administrator shall effectuate federal and applicable state income and employment tax withholding as required by law with respect to 50% of each Settlement Award distributed, and Defendant shall pay the employer's share of all required FICA and FUTA taxes on such amounts. *Id.* ¶ 22. Defendant shall pay these taxes, which amounts shall be deposited into the Qualified Settlement Fund after the Settlement Awards are mailed to Eligible Class Members, in addition to the Gross Settlement Amount. *Id.* Amounts withheld will be remitted by the Settlement Administrator from the Qualified Settlement Fund to the appropriate governmental authorities. The remaining 50% of each Settlement Award shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to FICA and FUTA withholding taxes. *Id.*

Settlement Awards will be mailed to all Eligible Class Members within thirty (30) days following the Effective Date or the First Payment, whichever is later, or as soon as reasonably practicable. *Id.* ¶ 25. Checks issued by the third party administrator shall be negotiable for one-hundred eighty (180) days. *Id.* ¶ 26. If at the conclusion of the 180-day period, there are any monies remaining in the Qualified Settlement Fund, those monies shall be paid to the Parties' agreed upon *cy pres* recipient, the Public Interest Law Center,[2] subject to the Court's approval in

---

[2] The Public Interest Law Center is a non-profit, public interest law firm that is part of Pennsylvania's Legal Aid Network, and which provides free legal services to workers facing

the Final Approval Order.  *Id.*  There will be no reversion of any portion of the Gross Settlement Amount to Defendants at any time.

In exchange for the Settlement benefits, all Opt-In Plaintiffs shall release "any and all claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees that were or could have been asserted in the Complaint based on the facts alleged for alleged unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, restitution or other compensation or relief arising under the FLSA, state wage and hour laws, or state common law claims (including unjust enrichment or *quantum meruit*) from September 3, 2011 to October 9, 2015, in weeks when the individual worked for Defendant as an Account Manager.  *Id.* ¶ 12. The Parties agree that only Opt-In Plaintiffs shall release their FLSA claims against Releasees.  *Id.* ¶ 12(b).

Members of the Pennsylvania Settlement Class will release  "any and all claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees that were or could have been asserted in the Complaint based on the facts alleged for alleged unpaid wages, overtime compensation, liquidated or other damages,

---

employment barriers in Pennsylvania, where many of the class members worked.  *See* http://www.pilcop.org/.  Courts in the Third Circuit routinely approve distributions to *cy pres* recipients, such as the Public Interest Law Center.  *See In re Baby Products Antitrust Litig.*, 708 F.3d 163, 172 (3d Cir. 2013) ("When excess settlement funds remain after claimants have received the distribution they are entitled to under the terms of the settlement agreement, there are three principal options for distributing the remaining funds—reversion to the defendant, escheat to the state, or distribution of the funds *cy pres.* Among these options, *cy pres* distributions have benefits over the alternative choices.  [ . . .] *Cy pres* distributions also preserve the deterrent effect, but (at least theoretically) more closely tailor the distribution to the interests of class members, including those absent members who have not received individual distributions.").  The objectives of PILCOP are closely aligned with the interests of Settlement Class Members, and utilizing a *cy pres* is the best option for the remaining funds. *See, e.g., In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL 2137224, at *11 (E.D. Pa. July 16, 2009) (approving provision for the charitable donation of unclaimed funds that amount to less than $50,000).

unpaid costs, restitution or other compensation or relief arising under Pennsylvania wage and hour laws, or state common law claims (including unjust enrichment or *quantum meruit*), from September 3, 2011 to October 9, 2015, in weeks when the individual worked for Defendant as an Account Manager." *Id.* ¶ 11(u); 11(bb); 13(c).

In addition, in exchange for the amounts approved by the Court as a service award, Named Plaintiffs, Maria Devlin and Julie Thumm, have agreed to a broader general release of claims than the other Eligible Class members. *Id.* ¶ 12(a); ¶ 19(a).

No releases shall be effective until Defendant makes both the First and Final Payment. *Id.* ¶ 12.

### C.     Notice To Potential Settlement Class Members

The Settlement Agreement provides what the Plaintiffs believe is the fairest and most practicable procedure for notifying Settlement Class Members of the terms of the Settlement Agreement and their respective rights and obligations under the Agreement – direct mail and electronic mail ("email").   Under the terms of the Settlement Agreement, within ten (10) business days after the Court's Preliminary Approval Order, Defendant shall provide Class Counsel and the Settlement Administrator with any updates to its previously produced electronic database containing the names, last known addresses, last known telephone numbers, and last known email addresses, social security numbers, and dates of employment as Account Managers of the Settlement Class.   In order to provide the best notice practicable, Class Counsel or the Settlement Administrator will run the list of Settlement Class Members through the U.S. Postal Service's National Change of Address database ("NCOA") or other public and/or private database before mailing the Settlement Notice and Opt-In Consent Form. *Id.* ¶ 13(d).

Within ten (10) business days after receiving the updated contact information from Defendant, Class Counsel or the Settlement Administrator will mail and email (if applicable) an

agreed upon and Court approved Notice and, to current Settlement Class members who have not previously opted in to the action, and Opt-In Consent Form, along with a self-addressed postage pre-paid envelope. *Id.* ¶ 13(e). Any Notices returned to the Settlement Administrator with a forwarding address shall be re-mailed by the Settlement Administrator within three (3) business days following receipt of the returned mail. *Id.* ¶ 13(g). If any Notice is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator shall undertake reasonable efforts such as skip traces to search for the correct address, and shall promptly re-mail the Settlement Notices to any newly found addresses. *Id.* Thirty (30) calendar days after the initial mailing, the Settlement Administrator shall make a duplicate mailing and email to any Settlement Class Members who have not yet returned an Opt-In Consent Form. *Id.* ¶ 13(f).

Settlement Class Members shall have sixty (60) calendar days from the time the Notice and Opt-In Consent Forms are initially mailed by the Settlement Administrator to submit an Opt-In Consent Form, object to or opt-out of the Settlement ("Notice Deadline"). *Id.* ¶ 11(p). Settlement Class Members who wish to object to the Settlement may do so by submitting a written statement objecting to Class Counsel and counsel for Defendants on or before the Notice Deadline. *Id.* ¶ 14. Additionally, Settlement Class Members who wish to exclude themselves from the Settlement ("opt out") must mail to the Settlement Administrator a written statement indicating that they do not wish to participate on or before the Notice Deadline, or be bound by the Settlement. *Id.* ¶ 15. To be timely, all Opt-In Consent Forms must be postmarked by the Notice Deadline. *Id.* ¶ 11(p); 13(i).

Defendant may communicate about the settlement with its current employees who are Settlement Class Members for the exclusive purpose of encouraging them to participate in the

Settlement and submit Opt-In Consent Forms, consistent with the terms and provisions of this Settlement Agreement.  *Id.* ¶ 13(h).  Defendant will not take any adverse action against any individual because he/she is eligible to participate or does participate in the Settlement and submits an Opt-In Consent Form.  *Id.*

## IV.   DISCUSSION

Plaintiffs respectfully request that the Court enter the accompanying proposed order preliminarily approving the collective action settlement of the FLSA claims and the class action settlement of the Rule 23 State Law Claims.  Defendant does not oppose this Motion.

### A.   Applicable Legal Standard

#### 1.   Legal Standard for Approval of FLSA Settlements

The standard for approval of an FLSA collective action requires only a determination that the compromise reached "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions."  *See Brumley v. Camin Cargo Control, Inc.*, No. 08-cv-1798, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (citing *Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *Bredbenner v. Liberty Travel, Inc*., No. 09-cv-905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011).

 "Although the Third Circuit has not yet specifically addressed what factors district courts should consider in evaluating settlement agreements under the FLSA, district courts in this Circuit have referred to the considerations set forth in *Lynn's Food Stores*.  *See In re Chickie's & Pete's Wage and Hour Litig.*, No. 12-6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014) (citing *Brown v. TrueBlue, Inc*., No. 10–514, 2013 WL 5408575, at *1 (M.D. Pa. Sept. 25, 2013); *Dino v. Pennsylvania*, No. 08–1493, 2013 WL 4041681, at *4 (M.D. Pa. Aug. 8, 2013); *Cuttic*, 868 F. Supp. 2d at 466).  Under *Lynn's Food Stores*, a district court may find that a proposed settlement agreement resolves a *bona fide* dispute when it "reflect[s] a reasonable

compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute." 679 F.2d at 1354.

Because the Third Circuit has not definitively set out FLSA specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement, district courts have looked to the same factors used in evaluating the fairness of class action settlements under Fed. R. Civ. P. 23. *See In re Chickie's & Pete's Wage and Hour Litig*, 2014 WL 911718, at *2. (citing *Girsh v. Jepson*, 521 F.2d 153, 157–58 (3d Cir. 1975)). Once the settlement is found to be fair and reasonable, the Court also determines whether the agreement furthers the purpose of the FLSA. *See Singleton v. First Student Management LLC*, No. 13-cv-1744, 2014 WL 3865853, at *8 (D.N.J. Aug. 6, 2014).

### 2. Legal Standard for Approval of Rule 23 Class Action Settlements

FED. R. CIV. P. 23(e) requires judicial approval for any compromise of claims brought on a class-wide basis. FED. R. CIV. P. 23(e) outlines a two-step process by which district courts must first determine whether a proposed class action settlement warrants preliminary approval and then, after notice of the settlement is given to class members, whether final approval is justified. *See, e.g.*, MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41.

Plaintiffs now seek preliminary approval of the settlement pursuant to Fed. R. Civ. P. 23(e). "The preliminary determination establishes an initial presumption of fairness." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 784 (3d Cir. 1995). A class settlement is entitled to an "initial presumption of fairness" when "(1) the negotiations occurred at arm's-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id.* at 785 (citing 2 Newberg on Class Actions § 11.41 at 11–88 (3d ed.1992)); MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42, at 238 (1997); *see also Klingensmith v. BP Prods. N. Amer., Inc.*,

No. 07-cv-1065, 2008 WL 4360965, at *5 (W.D. Pa. Sept. 24, 2008) (holding "the settlement merits preliminary approval [as the settlement was] reached as a result of arm's-length negotiation between experienced counsel aided by an experienced mediator."); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

The standard for final approval of a settlement is that the settlement is fair, adequate and reasonable to the class. *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 965 (3d Cir. 1983). When deciding preliminary approval, a court does not conduct a "definitive proceeding on fairness of the proposed settlement, and the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983); *see also In re Gen. Motors Corp.*, 55 F.3d at 785 (holding that the "preliminary determination establishes an initial presumption of fairness"). That determination must await the final hearing, at which the fairness, reasonableness, and adequacy of the settlement is assessed. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 638.

As set forth below, the proposed Settlement in this case falls well within the range of possible approval, because it meets each of the requirements of substantive and procedural fairness. In addition, the proposed Settlement meets the standard for approval of an FLSA settlement because it is a fair and reasonable compromise of a *bona fide* dispute that furthers the purpose of the FLSA. As such, there are no grounds to doubt the reasonableness of the Settlement.

**B.      The Terms of the Proposed Settlement Are Fair and Reasonable When Considering the Uncertainty of Continuing To Litigate This Matter**

Here, the proposed Settlement meets both the standard for preliminary approval under Rule 23(e) as well as under the FLSA.  The Gross Settlement Amount provides Settlement Class Members with the recovery of unpaid overtime hours worked, and it was carefully negotiated based on a substantial investigation by Class Counsel, and the review and analysis of documents produced by Plaintiffs, Opt-In Plaintiffs, and Defendant in preparation for mediation.  Schalman-Bergen Decl. ¶ 19.

During the course of their extensive settlement negotiations, the parties exchanged data regarding all Settlement Class Members and performed and exchanged detailed damages calculations. In addition to disagreeing on whether overtime was owed under the FLSA or state law, the parties also disagreed regarding the appropriate formula for calculating damages in the event Plaintiff prevailed on liability. For example, Defendant asserted that, with respect to the On Call Work performed by Class Members, that Class Members were "waiting to be engaged" rather than "engaged to wait," such that the entire On Call period would not be compensable, even if Plaintiff prevailed on the misclassification issue. Defendant also disputed that Plaintiff and Class Members performed off the clock work at lunch.  Defendant also asserted that, even if Plaintiff prevailed on liability, Plaintiff would not be able to demonstrate that the violation was a "knowing violation," such that Plaintiff would only be able to recover under a two-year FLSA statute of limitations. *See* 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Ultimately, the Settlement that the Parties reached reflects what Plaintiff's counsel believes to be a fair and reasonable settlement of disputed claims that takes into account the risks that Plaintiffs would face if the case proceeded in litigation.

More specifically, the Gross Settlement Amount is based on an analysis of work-weeks that the Settlement Class Members worked for Defendant during the relevant time period, as determined by Defendant's personnel and payroll records.  Schalman-Bergen Decl. ¶¶ 19. The Gross Settlement Amount is a negotiated amount that falls between Defendant's calculated potential exposure and Plaintiffs' calculated potential damages. The Gross Settlement Amount represents more than 100% of the unliquidated, unpaid overtime wages that Plaintiff calculated were owed to Settlement Class Members using a half time rate.  Schalman-Bergen Decl. ¶ 18.  This is an excellent result for the Eligible Class Members, especially considering the risks of continued litigation.  First, there was a risk that the Plaintiffs would not succeed in maintaining a collective or class through trial.  Second, a trial on the merits would involve significant risks for Plaintiff as to both liability and damages.  *Id*. ¶ 17.  While the Plaintiffs believe the case was very strong, it would require significant factual development and any verdict at trial could be delayed based on appeals by the Defendant.

In addition, the proposed allocation formula is fair and reasonable and should be preliminarily approved. *See Chaverria v. New York Airport Serv., LLC*, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) ("As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.") (citations omitted). Under the proposed allocation formula, each Eligible Class Member will receive settlement shares based on the type of work they performed in that workweek (*i.e.* Project Work, On Call Work, none or both).  This allocation formula takes into account that Settlement Class Members worked significantly more hours, and therefore are entitled to more damages in workweeks when they performed this additional work.  The amounts allocated to each type of settlement share (1, 5, 25, and 35) approximate the average value of the damages in each type of workweek.  Because the allocation

formula provides Class Members who performed Project Work and On Call Work with a higher settlement share, it is fair and reasonable.

Where, in comparison to the proposed Settlement, proceeding with litigation would require a substantial amount of time to yield a benefit to the class members, it is an indication that the proposed settlement is fair, reasonable, and adequate.  *See Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013), *appeal dismissed* (3d Cir. Feb. 20, 2013) (finding preliminary approval of settlement appropriate where "[n]ot only would continued litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place a substantial drain on judicial resources.").[3]  In the instant case, the complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement.

### C. The Settlement Agreement Is The Product of Informed, Non-Collusive Negotiation And Does Not Present Any Grounds To Question Its Fairness

It is well-established that, in determining whether a proposed settlement should be preliminarily approved, courts may consider whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations."  *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001) (quoting MANUAL FOR COMPLEX LITIGATION (SECOND) §30.44).  Courts are to give considerable weight to the experience of the attorneys who litigated the case and participated in settlement negotiations.  *See, e.g., Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able

---

[3] *See also In re Certainteed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact. … That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."); *Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12–cv–0718, 2013 WL 2338496, at *5 (M.D. Pa. May 29, 2013) ("The Court sees no reason to needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate.").

counsel negotiation at arm's-length cannot be gainsaid.  Lawyers know their strengths and they know where the bones are buried"); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) ("settlement negotiations took place at arm's-length between highly experience[d] and competent counsel. Their assessment of the settlement as fair and reasonable is entitled to considerable weight"); *UAW v. Gen. Motors Corp.*, No. 05 Civ. 73991, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006) (holding in an FLSA case, that "the endorsement of the parties' counsel is entitled to significant weight.").

The Settlement was the result of contested litigation, factual discovery, and arm's-length negotiations.  Schalman-Bergen Decl. ¶¶ 16-17; 20.  The proposed Settlement was reached only after (1) the exchange of substantial documents and records; (2) multiple pre-mediation conference calls;  (3) preparation and exchange of mediation statements; and (4) a full-day, in-person mediation session in Philadelphia, Pennsylvania, which included additional extensive arm's-length negotiations between counsel for the Parties both before and after the mediation. *Id.* ¶¶ 12-14.  As described above, Class Counsel extensively investigated the applicable law as applied to the relevant facts discovered in this action, and the potential defenses thereto.  The settlement amount is based on an intensive review of the facts and law.  *Id.* ¶¶ 12; 16.

Class Counsel are experienced and respected class action litigators.  *See* Schalman-Bergen Decl. ¶¶ 2-4, Ex. A; Declaration of Ryan Allen Hancock ("Hancock" Decl. at ¶¶ 2-10). Based on Class Counsel's knowledge and expertise in this area of law, Class Counsel believe this Settlement will provide a substantial benefit to the Settlement Classes.  Schalman-Bergen Decl. ¶ 16; Hancock Decl. ¶ 9.

Importantly, in reaching this Settlement, Defendant agreed to the Gross Settlement Amount on the condition that it be paid in two separate payments, and that the second payment

be delayed until January 2017.  Class Counsel has agreed to delay receipt of any attorneys' fees until the second payment, to ensure that Settlement Class Members receive payment as soon as possible.  This fact further demonstrates the non-collusive nature of the settlement and its reasonableness.

In summary, the proposed Settlement Agreement is the product of careful factual and legal research and arm's-length negotiations between the parties.

### D.   The Additional Service Awards To the Named Plaintiffs and Opt-In Plaintiffs Are Justified And Should Be Approved

Pursuant to the Settlement Agreement, Defendant has agreed to pay each of the Named Plaintiffs, Maria Devlin and Julie Thumm, a service award in the amount of Seven Thousand Five Hundred Dollars and Zero Cents ($7,500.00) for their efforts in bringing and prosecuting this matter, and in addition, for their broader release against Defendant.  *See* Settlement Agreement ¶ 19(a).  Subject to Court approval, this amount will be paid to each in addition to their recovery of unpaid overtime.  *Id.* ¶ 19.   Defendant has also agreed to pay Opt-In Plaintiffs, Jason Eisenberg, Michael Hagan, and Jennifer Wynne One Thousand Dollars and Zero Cents (1,000.00) each for providing significant information, including executed declarations to Class Counsel. Subject to Court approval, this amount will be paid to each in addition to their recovery of unpaid overtime.  *Id.* ¶ 19(a).

 "[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation."  *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (internal citation omitted); *see also Martin v. Foster Wheeler Energy Corp.*, No. 3:06-cv-0878, 2008 WL 906472, at *8-*9 (M.D. Pa. Mar. 31, 2008) (approving incentive award for named representatives a total of $10,000.00).   It is particularly appropriate to compensate named

representative plaintiffs with service awards where they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of a class. *Young v. Tri Cnty. Sec. Agency, Inc.*, 13-cv-5971, 2014 WL 1806881, at *1, 8 (E.D. Pa. May 7, 2014) (approving incentive award for named representative in action alleging violations of the FLSA and PMWA, where named plaintiff released all waivable claims arising out of employment and made significant contributions to the litigation).

Here, the proposed additional payment is justified by the benefits that Maria Devlin and Julie Thumm's diligent efforts have brought to the Settlement Class Members. The Plaintiffs took the significant risk of coming forward to represent the interests of their fellow employees. Schalman-Bergen Decl. ¶¶ 20-22. They worked with Class Counsel, providing background information about their employment, about Defendant's policies and practices, and about the allegations in this lawsuit. *Id.* ¶ 20. They risked their reputation in the community and in their field of employment in order to participate in this case on behalf of the Class. *Id.* The three additional Opt-In Plaintiffs also provided significant assistance to Class Counsel in preparing for the mediation, and each executed declarations in support of the mediation. Schalman-Bergen Decl. ¶¶ 20  *See also Sand v. Greenberg*, No. 08-cv-7840, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"); *Craig*, No. 4:08-cv-2317, 2013 WL 84928 at *13 ("[N]amed plaintiffs in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation."). They also are providing a broader release of claims to Defendant. *Id.* ¶ 21.

The additional payment requested in this case is also in line with those approved in wage and hour collective and class actions throughout the Third Circuit. *See, e.g.*, *Sakalas v. Wilkes Barre Hosp. Co.*, No. 3:11-cv-0546, 2014 WL 1871919, at *5 (M.D. Pa. May 8, 2014) ("Court believes that the proposed total award of $7,500.00 (or 1.57%) of a $475,000.00 settlement fund is well-deserved and not out of proportion to the level of [named plaintiff's] cooperation. Such an award would not significantly reduce compensation for the other class members, nor is it out of the mainstream for class action service awards in the Third Circuit."); *Bredbenner*, No. 09-cv-905, 2011 WL 1344745, at *22-24 (approving service payments of $10,000.00 to each of eight named plaintiffs in wage and hour case, and citing 2006 empirical study that found average award per class representative to be $16,000); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-cv-3202, 2009 WL 2137224, at *12 (E.D. Pa. July 16, 2009) (approving $20,000.00 enhancement awards for each of three named plaintiffs in wage and hour settlement).

For these reasons, the service award payment of $7,500 each to Maria Devlin and Julie Thumm and a payment of $1,000.00 each to Opt-In Plaintiffs Jason Eisenberg, Michael Hagan, and Jennifer Wynne should be preliminarily approved as fair and reasonable.

### E.      The Proposed Settlement Furthers the Purpose of the FLSA

Finally, the Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. *Compare Brown*, 2013 WL 5408575, at *3 (finding settlement agreement frustrated the implementation of the FLSA when it required the plaintiffs to keep the terms of the settlement confidential or risk forfeiting their awards) *with Chickie's & Pete's Wage and Hour Litig.*, 2014 WL 911718, at *3 (holding that provision limiting press coverage does not frustrate the purpose of the FLSA).

Indeed, the settlement furthers the purposes of the FLSA by providing Eligible Class Members with substantial recovery for their unpaid overtime, that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover.  *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...").  Because the settlement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

F.     **The Court Should Provisionally Certify The Pennsylvania Settlement Class Under Fed. R. Civ. P. 23[4]**

In order to obtain class certification, a party must show that all four prerequisites of Rule 23(a) are met and that the case qualifies as at least one of the matters identified in Rule 23(b). *See Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (citing *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975), *cert. denied*, 421 U.S. 1011 (1975)).  A case may be certified as a class action under Rule 23 when:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

---

[4] For a collective action to proceed under section 216(b) of FLSA, two requirements must be met: (1) all members of the collective action must affirmatively consent to join; and (2) all members of the collective action must be "similarly situated." *See Young*, 2014 WL 1806881, at *2.  Because the requirements of Rule 23 are more stringent than Section 216(b) of the FLSA, Plaintiffs contend that they have also met the criterion for certification of the FLSA class as "similarly situated" under 29 U.S.C. § 216(b).  Plaintiffs will seek final certification of the Settlement Class for settlement purposes only in their Motion for Final Approval.

(4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a); *Weiss v. York Hosp*., 745 F.2d 786, 807 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985).  These four threshold requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively.  *See, e.g.*, *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 527 (3d Cir. 2004).

Federal Rule of Civil Procedure 23(b)(3) permits the court to certify a class in cases where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  These dual requirements are commonly referred to as "predominance" and "superiority," respectively.  *See, e.g.*, *In re Constar Int'l, Inc. Sec. Litig*., 585 F.3d 774, 780 (3d Cir. 2009).

A party that seeks to certify a settlement class must satisfy the same requirements necessary to maintain a litigation class.  *In re Gen. Motors Corp.*, 55 F.3d at 778 (discussing and approving use of settlement-only classes).  The substantive terms of the settlement agreement may factor into certain aspects of the certification calculus.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997).  Pursuant to FED. R. CIV. P. 23(c)(1), the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date."  *Fry v. Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (*citing Collier v. Montgomery Cnty. Hous. Auth.*, 192 F.R.D. 176, 181 (E.D. Pa. 2000)).

Plaintiffs move for preliminary certification of the Pennsylvania Settlement Class under FED. R. CIV. P. 23(b)(3), and requests that the Court preliminarily find that all of the requirements for class certification are satisfied for settlement purposes only.  Pursuant to the terms of the Settlement Agreement, Defendant has stipulated that, for settlement purposes only,

the requisites for establishing class certification pursuant to FED. R. CIV. P. 23 with respect to the State Settlement Class Members have been and are met. *See* Settlement Agreement ¶ 9.

### 1. The Pennsylvania Settlement Class Is Sufficiently Numerous

To meet the numerosity requirement of FED. R. CIV. P. 23(a)(1), "the class size only need be large enough that it makes joinder impracticable." *Fry*, 198 F.R.D. at 467. The proposed Pennsylvania Settlement Class here easily meets the numerosity requirement because approximately 319 Pennsylvania Settlement Class Members have been identified through Defendant's payroll records.

### 2. The Pennsylvania Settlement Class Seeks Resolution of Common Questions

The commonality requirement of FED. R. CIV. P. 23(a)(2) is satisfied if the Named Plaintiffs share at least one question of fact or law with the grievances of the prospective class. *See Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Here, Plaintiffs and the Pennsylvania Settlement Class Members' claims arise from Defendant's common pay policies and misclassification of Account Managers as exempt. The alleged common issues include, for example: (1) whether the Pennsylvania Settlement Class members were misclassified as exempt; (2) whether Pennsylvania Settlement Class Members were entitled to overtime compensation for their hours worked; (3) whether Pennsylvania Settlement Class Members were similarly denied compensation for all hours worked; and (4) whether Defendant's policy of failing to pay any overtime compensation to Pennsylvania Settlement Class Members violated state wage and hour laws and common law. These sample common questions of law and fact, which Plaintiffs contend apply uniformly to all members of the proposed Pennsylvania Settlement Class, are sufficient to satisfy the commonality requirement.

### 3. The Claims Of The Named Plaintiffs Are Typical Of the Pennsylvania Settlement Class

25

The typicality requirement of FED. R. CIV. P. 23(a)(3) is satisfied for purposes of preliminarily approving the settlement, because Plaintiffs' claims are reasonably coextensive with those of absent class members, and because Plaintiffs possess the same interest and suffered the same injury as the absent class members. *See Fry*, 198 F.R.D. at 468; *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982). Plaintiffs' claims for unpaid overtime compensation during weeks when they worked as Account Managers are typical of the claims of the Pennsylvania Settlement Class.

### 4. Class Counsel And Plaintiffs Meet The Adequacy Requirements Of The Pennsylvania Settlement Class

To meet the adequacy of representation requirement of FED. R. CIV. P. 23(a)(4), a named plaintiff must show: 1) that the potential Named Plaintiff has the ability and the incentive to represent the claims of the class vigorously; 2) that he or she has obtained adequate counsel; and 3) that there is no conflict between the individual's claims and those asserted on behalf of the class. *Fry*, 198 F.R.D. at 469.

The adequacy of representation requirement is met here because Plaintiffs have the same interests as the Pennsylvania Settlement Class Members. There is no conflict between the Plaintiffs and the Pennsylvania Settlement Class in this case, and Plaintiffs' claims are in line with the claims of the class. The Plaintiffs have and will continue to aggressively and competently assert the interests of the Pennsylvania Settlement Class, and Plaintiffs' Class Counsel is skilled and experienced in wage and hour class action litigation. *See* Schalman-Bergen Decl. ¶¶ 2-4, Ex. A; Hancock Decl. ¶¶ 2-6.

### 5. The Pennsylvania Settlement Class Satisfies The Predominance And Superiority Requirements of FED. R. CIV. P. 23(b)(3)

Under FED. R. CIV. P. 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions

26

affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

For the reasons discussed above, the Pennsylvania Settlement Class satisfies the predominance requirement. In addition, allowing the Pennsylvania Settlement Class Members the opportunity to participate in a class settlement that yields an immediate and substantial benefit is highly superior to having a multiplicity of individual and duplicative proceedings in this Court. It is also superior to the alternative of leaving these important labor rights unaddressed due to the difficulty of finding legal representation and filing claims on an individual basis. Moreover, the Third Circuit has ruled that there is no reason to preclude federal jurisdiction over class actions asserting claims under state statutory wage and overtime laws paralleling the FLSA. *See Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012).

Accordingly, Plaintiffs respectfully requests that the Court provisionally certify the Pennsylvania Settlement Class for settlement purposes only.

### G. The Proposed Notices Provide Adequate Notice To The Settlement Class Members And Satisfy Due Process

The United States Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014) (approving "Settlement Notice and Option Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA Collective Class Members of all material elements of the Litigation and the Agreement"); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July

31, 2014) (approving FLSA notice that provides "notice to the Eligible Settlement Class Members of the terms of the Settlement and the options facing the Settlement Class").

Here, the proposed Notice and manner of distribution negotiated and agreed upon by the parties is "the best notice practicable," as required under FED. R. CIV. P. 23(c)(2)(B), and related FLSA case law.  All Settlement Class Members have been identified in a class list prepared by Defendant, and the Notice will be mailed directly to the last known address of each member (and those addresses that the Settlement Administrator is able to find using reasonable investigatory methods).  The Notice will also be emailed to Settlement Class Members whose email addresses are known.

The proposed Notice, which is attached to the Settlement Agreement, is clear and straightforward, and provides information on the meaning and nature of the terms and provisions of the Settlement Agreement, the monetary awards that the Settlement will provide to Eligible Class Members, including the allocation formula, the scope of the release, the request for attorneys' fees and costs, and the procedures and deadlines for making a claim for a settlement award, opting out of the Settlement or submitting objections.  *See* Settlement Agreement, Ex. A.

Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class or collective notice disseminated under authority of the Court, and should be approved.

### H.    **The Proposed Implementation Schedule**

The Settlement Agreement contains a proposed schedule for notice and final approval of the Settlement Agreement.  The proposed schedule, which the Plaintiffs respectfully requests that this Court approve, is as follows:

| | |
|---|---|
| Defendant to send CAFA Notice | Within ten (10) business days after submission of the Settlement Agreement to the Court |

| Defendant Provides Settlement Class Contact Information | Within ten (10) business days after the Court's Preliminary Approval Order |
| --- | --- |
| Mailing of Class Notice and Opt-In Consent Form | Within ten (10) business days after receiving the contact information for Settlement Class |
| Reminder Notice | Thirty (30) days after the Settlement Administrator initially mails the Notice and Opt-In Consent Form |
| Report by Class Counsel | Within ten (5) business days after the Notice Deadline |
| Plaintiffs' Motion for Approval of Attorneys' Fees and Costs | Forty-Five (45) days after the Settlement Administrator initially mails the Notice and Opt-In Consent Form |
| Deadline to postmark Opt-In Consent Form, objections or requests for exclusion ("Objection and Exclusion Deadline") | Sixty (60) days after the Settlement Administrator initially mails the Notice and Opt-In Consent Form |
| Plaintiffs' Unopposed Motion for Final Approval | Five (5) business days prior to Final Approval Hearing |
| Final Approval Hearing | At the Court's convenience, approximately 100 days after the Court's Preliminary Approval Order. |

## V.   <u>CONCLUSION</u>

Based upon the foregoing reasons, the Plaintiffs respectfully request that the Court grant this Unopposed Motion for Preliminary Approval, and sign the accompanying proposed preliminary approval order.

Dated: March 7, 2016                              Respectfully Submitted,

<u>s/ Sarah R. Schalman-Bergen</u>
Sarah R. Schalman-Bergen (PA 206211)
Shanon J. Carson (PA 85957)
Camille Fundora (PA 312533)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: sschalman-bergen@bm.net
        scarson@bm.net
        cfundora@bm.net

Ryan Allen Hancock (PA 92590)
Bruce Ludwig (PA 23251)
WILLIG, WILLIAMS & DAVIDSON
1845 Walnut Street, 24th Floor

Philadelphia, PA 19103
Telephone:  (215) 656-3679
Facsimile:  (215) 561-5135
Email:  rhancock@wwdlaw.com
         bludwig@wwdlaw.com

*Attorneys for the Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record through the Court's ECF system this 7th day of March, 2016.

s/ Sarah R. Schalman-Bergen
Sarah R. Schalman-Bergen (PA 206211)
Shanon J. Carson (PA 85957)
Camille Fundora (PA 312533)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: SSchalman-Bergen@bm.net
