**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARIA DEVLIN and JULIE THUMM,** | : | **CIVIL ACTION** |
| **individually and on behalf of all others** | : | |
| **similarly situated** | : | **NO. 15-4976** |
| *Plaintiffs* | : | |
| | : | **CLASS ACTION** |
| **v.** | : | |
| | : | |
| **FERRANDINO & SON, INC.** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                              DECEMBER 9, 2016

# MEMORANDUM OPINION

## INTRODUCTION

Before this Court is a *motion for final approval of settlement agreement and for approval of attorneys' fees and costs* filed by Plaintiffs Maria Devlin and Julie Thumm ("Plaintiffs") pursuant to 29 U.S.C. § 216(b) and Federal Rule of Civil Procedure ("Rule") 23.  [ECF 44].  Previously, this Court had granted preliminary approval to the Class Action Settlement Agreement.  [ECF 40, 41].  A fairness hearing was scheduled and held on September 27, 2016, to entertain oral argument on Plaintiffs' unopposed motion for final approval.  Counsel for both parties appeared.  For the reasons stated herein, the motion for final approval of the class action settlement is granted.

## BACKGROUND

On September 3, 2015, Plaintiffs, on behalf of themselves and all others similarly situated, filed a class and collective action complaint against Defendant Ferrandino & Sons, Inc. ("Defendant"), alleging that Defendant violated the *Fair Labor Standards Act of 1938*, 29 U.S.C. §

201, *et seq.* ("FLSA"),[1] and the Pennsylvania Minimum Wage Act, 43 Pa. Cons. Stat. § 333.101, *et seq.*, ("PMWA"), by treating employees designated as "account managers" as exempt employees and failing to pay these employees overtime wages.[2]  [ECF 1 ¶¶ 18, 20 25-33].   Plaintiffs aver that the class includes all employees who worked as account managers for Defendant prior to January 2015, when Defendant changed its pay policy and began paying Plaintiffs and other account managers hourly and overtime compensation.  (*Id.* ¶ 34).

Prior to Defendant filing an answer, the parties advised that they were attempting to resolve this litigation through mediation.  [ECF 21].  On October 19, 2015, this Court approved the parties' stipulation, ordered that certain documents be exchanged, and stayed this case pending the outcome of the mediation.  [ECF 22].  Following the substantial exchange of informal discovery, including electronic payroll records showing days worked and compensation paid to Plaintiffs and the class members, numerous pre-mediation conference calls, extensive settlement negotiations, and a full-day mediation, the parties notified this Court that they had reached a settlement in principle and were working on a final settlement agreement.  [ECF 36].

On March 7, 2016, Plaintiffs filed their *Unopposed Motion for Preliminary Approval of the Settlement Agreement*.  [ECF 39].  This Court granted the motion for preliminary approval, approved the proposed notice of settlement (the "Class Notice"), and ordered, *inter alia,* the settlement class preliminarily certified as follows:

> All current or former employees of Defendant who performed work as Account Managers at any time between September 3, 2011, and January 5, 2015, and all current or former employees of Defendant who performed work as Account

---

[1]	The FLSA provides, *inter alia*, that an employer must pay an employee that works in excess of 40 hours in a week compensation at a rate not less than one and one-half the regular rate the employee is paid. 29 U.S.C. § 207(a)(1).  Section 207 does not apply to certain exempt employees.  *Id.* § 213(a).

[2]	Plaintiffs filed a collective action under FLSA and a class action under the PMWA.  This Court will refer to both as a class action for the purposes of this Memorandum Opinion.

Managers and performed On Call Work during at least one work week between January 5, 2015, and October 9, 2015.

(the "Settlement Class Members") [ECF 41 at 1-2].  A hearing for final approval was scheduled for September 27, 2016.  (*Id.* at 3).

The Class Notices were mailed to the last known addresses of each of the Settlement Class Members on April 25, 2016.  (*See* Declaration of Sarah R. Schalman-Bergen, ¶ 14 (the "Schalman-Bergen Decl.")) [ECF 44-2].[3]  The Class Notice advised that June 24, 2016, was the deadline for class members to opt into the settlement,[4] request to be excluded from the settlement, and/or to object to the proposed settlement.  [*See* ECF 41 at 2-3].  To date, 275 of the Settlement Class Members have opted into the settlement, and none of the 320 Settlement Class Members have opted out or objected to the settlement.

On September 19, 2016, Plaintiffs filed the instant motion, and oral argument on the merits of the settlement agreement was held on September 27, 2016.  No parties or Settlement Class Members objected to the motion at the hearing.

### The Proposed Class Action Settlement Agreement

The proposed class action settlement agreement contains the following material terms:

- Defendant has agreed to pay the sum of One Million, Five Hundred Fifty Thousand Dollars ($1,550,000.00) (the "Gross Settlement Amount"), excluding the employer's share of FICA and FITA payroll taxes.

---

[3]      The Class Notices were mailed to the 319 known Settlement Class Members.  On April 29, 2016, an individual who was not on the original class list submitted a signed claim form.  (Schalman-Bergen Decl. ¶ 15).  The parties agreed that this individual should be included in the settlement.  (*Id.*).  Thus, there are 320 Settlement Class Members.

[4]      To release FLSA claims as part of a collective action settlement, a settling class member must opt into the settlement. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

- One-third of the Gross Settlement Amount, totaling the sum of Five Hundred Sixteen Thousand, Six Hundred Sixty-Seven Dollars ($516,667.00) will be paid to Berger & Montague, P.C. and Willig, Williams & Davidson ("Class Counsel"), contingent upon approval of the class settlement, for attorneys' fees.  Eight Thousand, Eight Hundred Thirteen Dollars and Forty Cents ($8,813.40) will be paid to Class Counsel as reasonable costs.

- Also out of the Gross Settlement Amount: (1) Plaintiffs Maria Devlin and Julie Thumm shall each be paid Seven Thousand, Five Hundred Dollars ($7,500.00) for their service to the Settlement Class Members and the time and effort spent litigating this action; (2) Opt-In Plaintiffs Jason Eisenberg, Michael Hagan, and Jennifer Wynne shall each be paid One Thousand Dollars ($1,000.00) for their role in prosecuting this litigation; and (3) The Angeion Group, LLC (the "Settlement Administrator") shall be paid its costs incurred to administer the settlement, not to exceed Seventeen Thousand, Five Hundred Dollars ($17,500.00).

- Out of the remaining Gross Settlement Amount (the "Net Settlement Amount"), Two Hundred Fifty Dollars ($250) shall be paid to each Settlement Class Member[5] prior to the determination of *pro rata* individual settlement shares based on the formula described in Paragraph 21 of the Settlement Agreement.  The total number of settlement shares shall be divided into the Net Settlement Amount, minus the $250 awarded to each Settlement Class Member, to determine the per share dollar figure.  That dollar figure shall be multiplied by each Settlement Class Member's number of settlement shares, and added to the $250 set aside for each Settlement Class Member.  Those Settlement Class Members that did not opt into the settlement[6] shall have their settlement award reduced by fifty percent (50%), and this amount shall be divided on a pro rata basis to the Settlement Class Members that opted into the settlement.

Notice of these material terms was provided to all potential Settlement Class Members pursuant to procedures stipulated in the preliminarily approved class action settlement.  As of the date of the final approval hearing, no objections had been lodged to any of the proposed class action settlement terms.

---

[5]     The Settlement Agreement describes dividing the settlement shares among "Eligible Class Members."  Because no potential class member affirmatively opted out, all of the Settlement Class members are eligible to receive settlement shares.  [ECF 39-3 ¶ 11(g)].

[6]     275 of 320 Settlement Class Members opted into the settlement, and 45 did not.

**DISCUSSION**

Consistent with Rule 23, when granting final approval of a class action settlement, a district court must hold a hearing and conclude that the proposed settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(2); *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 295 (3d Cir. 2011); *In re Ins. Brokerage Antitrust Litig*., 579 F.3d 241, 258 (3d Cir. 2009).  Although there is a strong judicial policy in favor of voluntary settlement agreements, *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982), courts are generally afforded broad discretion in determining whether to approve a proposed class action settlement.  *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995).  "The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Ltg*., 55 F.3d 768, 784 (3d Cir. 1995).  In addition to conservation of judicial resources, "[t]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial."  *Id*.

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit Court of Appeals set forth factors (often called the "*Girsh* factors") a district court should consider when reviewing a proposed class action settlement.  The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendant to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 258 (citing *Girsh*, 521 F.2d at 157).  No one factor is dispositive.  *Hall v. Best Buy Co.*, 274 F.R.D. 154, 169 (E.D. Pa. 2011).

In *Krell v. Prudential Ins. Co. of Am. (In re Prudential)*, 148 F.3d 283 (3d Cir. 1998), the Third Circuit identified additional nonexclusive factors (the "*Prudential* factors") for courts to consider for a "thorough going analysis of settlement terms."  *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010).  These *Prudential* factors often overlap with the *Girsh* factors, and include:

> (1)  the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;
> (2)  the existence and probable outcome of claims by other classes and subclasses;
> (3)  the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved or likely to be achieved for other claimants;
> (4)  whether class or subclass members are accorded the right to opt out of the settlement;
> (5)  whether any provisions for attorneys' fees are reasonable; and
> (6)  whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Id*.  Only the *Prudential* factors relevant to the litigation in question need be addressed.  *In re Prudential*, 148 F.3d at 323-24.

In addition to the Rule 23 factors, a FLSA collective action settlement brought pursuant to 29 U.S.C. § 216(b) requires a district court to find that the settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions."  *McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014); *see also Adams v. Bayview Asset Mgmt., LLC*, 11 F. Supp. 3d 474, 476 (E.D. Pa. 2014) (internal quotations omitted); *Williams v. Securitas Sec. Servs. USA, Inc.*, 2012 WL 5451802, at *3 (E.D. Pa. Nov. 8, 2012) ("Because the settlement resolves both

FLSA and PMWA claims, it must be 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions' and 'fair, reasonable, and adequate' under Rule 23(e) of the Federal Rules of Civil Procedure for the court to approve it."). "A proposed settlement agreement resolves a bona fide dispute if it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute' and is not a 'mere waiver of statutory rights brought about by an employer's overreaching.'" *McGee*, 2014 WL 2514582, at *2 (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

With these principals in mind, this Court will consider each of the *Girsh* factors and only the relevant *Prudential* factors in its review of the proposed class action settlement, and will consider whether the proposed settlement is also a "fair and reasonable resolution of a bona fide dispute over FLSA provisions."

### *Girsh* Factors

#### 1. *The complexity, expense and likely duration of the litigation*

Needless to say, had this settlement not been reached, this matter would have proceeded to trial to determine Defendant's liability and damages, if any. The continued prosecution of Plaintiffs' claims against Defendant would have required significant additional expense and a substantial delay before any potential recovery. Further, no matter the outcome of a trial, it is likely that either one or all of the parties would have appealed, leading to further litigation costs and delay in any realized recovery. Thus, the avoidance of unnecessary expenditure of time and resources benefits all parties, and weighs in favor of approving the settlement. *See In re Gen. Motors*, 55 F.3d at 812 (concluding that lengthy discovery and potential opposition by the defendant were factors weighing in favor of settlement).

> 2.      *The reaction of the class to the settlement*

"The Third Circuit has looked to the number of objectors from the class as an indication of the reaction of the class." *In re Certainteed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 485 (E.D. Pa. 2010) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 234-35 (3d Cir. 2001)). "Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" *In re Gen. Motors*, 55 F.3d at 812 (quoting *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)). A low number of objectors or opt-outs is persuasive evidence of the proposed settlement's fairness and adequacy. *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 415 (E.D. Pa. 2010) (citing *In re Cendant*, 264 F.3d at 234-35).

Here, 320 individuals meet the Class definition. The individuals identified as potential Settlement Class Members were mailed notices and Class forms.[7] As of the date of this Order, no Settlement Class Member has objected to or opted out of the proposed settlement. Consequently, this factor is persuasive evidence of the fairness and adequacy of the proposed settlement, and weighs in favor of a final approval. *See In re Cendant*, 264 F.3d at 234-35 (finding that a low number of objectors and opt-outs strongly favors approval of the settlement).

> 3.      *The stage of the proceedings and the amount of discovery completed*

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Id.* at 235. When evaluating this third *Girsh* factor, courts must evaluate the procedural stage of the case at the time of the proposed settlement to assess whether counsel adequately appreciated the merits of the case while negotiating. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "[C]ourts

---

[7]      Only one of the 320 was not mailed a form, but this class member did submit an opt in form, and has been included in the proposed settlement.

generally recognize that a proposed class settlement is presumptively valid where . . . the parties engaged in arm's length negotiations after meaningful discovery." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144-45 (E.D. Pa. 2000). Settlements reached following discovery "are more likely to reflect the true value of the claim." *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atl. Corp.*, 2 F.3d at 1314).

As set forth above, this case has been actively litigated for more than a year. Prior to reaching a settlement, the parties exchanged discovery, conducted numerous pre-mediation discussions, and participated in a mediation. (Schalman-Bergen Decl. ¶ 7). As a result of the extensive proceedings that preceded the parties' settlement, the parties had ample opportunity to identify and grasp the strengths and weaknesses of each party's case. Consequently, this Court finds that this factor weighs in favor of approval.

### 4. *The risks of establishing liability*

This *Girsh* factor weighs the likelihood of ultimate success against the benefits of an immediate settlement. The existence of obstacles, if any, to a plaintiff's success at trial weighs in favor of settlement. *In re Warfarin*, 391 F.3d at 537; *In re Prudential*, 148 F.3d at 319.

In this case, Defendant denied liability, disputed that the claims were appropriate for class certification, and disputed the number of hours worked by the Settlement Class Members. Were this case to proceed, it is possible that Plaintiffs may not have established Defendant's liability and, therefore, no recovery would have been obtained for the Settlement Class Members. The proposed settlement avoids the risk that Defendant is found not liable. Thus, this Court finds that this factor weighs in favor of approval.

### 5. *The risks of establishing damages*

This factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant*, 264 F.3d at 238-39. As with the fourth factor, the proposed settlement will allow the Settlement Class Members to obtain the remaining $1,550,000.00. Were this case to proceed, it is possible that Plaintiffs may have failed to establish any damages, or may have established less than $1,550,000.00 in damages, even if they had prevailed on the merits. In light of this uncertainty as to the amount of any potential damages award, the settlement amount of $1,550,000.00 is a good result. Accordingly, this factor weighs in favor of approval.

### 6. *The risks of maintaining the class action through trial*

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action," *In re Gen. Motors*, 55 F.3d at 817, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial. Defendant disputed that the claims presented in this action were appropriate for class certification or FLSA collective action treatment, presenting some risk to class certification. Accordingly, this factor weighs in favor of approval.

### 7. *The ability of defendants to withstand a greater judgment*

This factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *In re Cendant*, 264 F.3d at 240. The parties have not addressed whether Defendant could withstand a greater judgment than the $1,550,000.00 settlement amount. Therefore, this factor is neutral.

*8-9.  The range of reasonableness of settlement in light of best and possible recovery and all attendant risks of litigation*

The last two *Girsh* factors, often considered together, evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case.  *In re Warfarin*, 391 F.3d at 538.  In order to assess the reasonableness of a settlement in cases seeking monetary relief, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."  *In re Prudential*, 148 F.3d at 322.

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief.  While the parties did not discuss what the potential upper limit of Defendant's potential liability, they noted that the Gross Settlement Amount fell between Defendant's calculated exposure and Plaintiffs' calculated damages, and represents more than 100% of the unliquidated, unpaid overtime wages Plaintiffs calculated were owed to Settlement Class Members.  This settlement amount is reasonable in light of the attendant risk that the Settlement Class Members may not have obtained any recovery if this case were litigated.  Thus, these factors weigh in favor of approval.

**Relevant *Prudential* Factors**

*1.  Factors that bear on the maturity of the underlying substantive issues*

This case was settled at a mature point in the proceedings.  Discovery had been conducted and, as such, the parties were in a position to fully evaluate the strengths, weaknesses, and merits of their respective case.  The development of the record weighs in favor of approval.  *See Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 215 (E.D. Pa. 2011) (finding settlement reasonable where underlying substantive issues were "mature in light of the experience of the attorneys, extent of discovery, posture of case, and mediation efforts undertaken.").

>    *2. Results achieved by settlement for individual Settlement Class Members versus the results achieved – or likely to be achieved – for other claimants*

As described in the analysis of the *Girsh* factors, this factor weighs in favor of approval since none of the Settlement Class Members opted out and, as stated, the proposed class action settlement agreement is a reasonable recovery for the Settlement Class Members.

>    *3. Whether Class members are afforded the right to opt out of the settlement*

As part of the approved Class Notice process, notices were sent out on April 22, 2016, advising Settlement Class Members of the deadline and opportunity to opt out by June 24, 2016.  As of the date of this Order, none opted out.  Therefore, this factor weighs in favor of approval.

>    *4. Whether any provisions for attorneys' fees are reasonable*

As part of the approved Class Notice process, Settlement Class Members were advised that Plaintiffs would seek an award of attorneys' fees of no more than one-third of the Settlement Amount.  No Settlement Class Members objected to such an award.  Moreover, for the reasons discussed in greater length below, the attorneys' fees and expenses sought and agreed to in this case are reasonable.  Thus, this factor weighs in favor of approval.

To summarize, in light of the presumption of fairness that attaches to the settlement, *see In re Warfarin*, 391 F.3d at 539, and upon the consideration of each of the *Girsh* factors and the relevant *Prudential* factors, this Court finds that the proposed class action settlement is fair and reasonable.

**Fair and Reasonable Resolution of a Bona Fide Dispute Over FLSA Provisions**

To evaluate the fairness and reasonableness of a proposed FLSA settlement, courts routinely consider the *Girsh* factors.  *McGee*, 2014 WL 2514582, at *2.  Accordingly, this Court, having already considered the *Girsh* factors, concludes that the proposed settlement is fair.  Defendant was also prepared to argue that they were not liable under FLSA and to dispute the hours worked by the

Settlement Class Members.  Whether "account managers" were exempt employees was open to dispute, as were the number of hours worked by each employee, making the instant dispute "bona fide" for settlement purposes.  *Id.*  Accordingly, this Court finds the proposed settlement to be a fair and reasonable settlement pursuant to 29 U.S.C. § 261(b).

### Request for Attorneys' Fees and Expenses

As compensation for their legal services and efforts, Class Counsel have requested that this Court approve the portion of the settlement which provides for reimbursement of attorneys' fees in the amount of $516,667.00, and for costs in the amount of $8,813.40.  This is an amount contemplated and agreed to in the settlement agreement, and disclosed to Settlement Class Members.  As noted above, the Class Notice expressly informed Settlement Class Members that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed one-third of the Gross Settlement Amount.  To date, no Settlement Class Member has objected to the settlement or to the requested amounts for fees and costs, which evidences both a satisfactory result, and a reasonable reimbursement of fees and costs.  In support of their request, counsel rely upon the declarations of Sarah R. Schalman-Bergen, an attorney employed by Berger & Montague, P.C., [ECF 44-2], and Ryan Allen Hancock, an attorney at Willig, Williams & Davison, [ECF 44-3] ("Hancock Decl.").

Rule 23(h) provides "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Regarding attorneys' fees requests, the Third Circuit Court of Appeals has found that these requests are "generally assessed under one of two methods: the percentage-of-recovery ("POR") approach or the lodestar scheme."  *Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 330 (3d Cir. 2011).  The POR approach "applies a certain percentage to the settlement fund," while the lodestar method "multiplies the

number of hours class counsel worked on a case by a reasonable hourly billing rate for such services." *Id.* (quoting *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009). The Third Circuit has noted that the POR method "is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *Id.* (citations and quotations omitted). The lodestar method "is more commonly utilized in statutory fee-shifting cases [] where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation . . . ." *Id.* (citations and quotations omitted). In POR cases, the lodestar method is sometimes used to "cross-check the reasonableness of a percentage-of-recovery fee award." *Id.*

Class Counsel seeks an award of attorneys' fees under the POR method. To determine what constitutes a reasonable POR award, the district court must consider the following ten factors: "(1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement." *In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009) (internal citations omitted).

### 1. *Size of the fund created and the number of beneficiaries*

The Gross Settlement Amount in this case consists of $1,550,000.00 plus Defendant's share of FICA and FITA payroll taxes, and is a significant recovery for Plaintiffs and the Settlement Class

Members in this case.  It will benefit 320 former employees.[8]  This factor weighs in favor of approval.

### 2.  *Presence or absence of substantial objections by members of the Class*

The notice sent to the Settlement Class Members explained that counsel would request to be awarded one-third of the Gross Settlement Amount.  The notice further explained the right of each Settlement Class Member to object to the settlement, the manner in which to do so, and the right of each Class member to appear at the September 27, 2016 hearing.  No objections to the proposed attorneys' fees were received, and no Settlement Class Members appeared at the hearing to object. Therefore, this factor weighs in favor of approval.

### 3.  *Skill and efficiency of the attorneys involved*

Plaintiffs and the Settlement Class Members were represented by highly skilled and experienced counsel.  Class Counsel includes attorneys with significant employment law experience as well as class action and collective action experience.  (Schalman-Bergen Decl. ¶¶ 2-4); (Hancock Decl. ¶¶ 2-4).  Class Counsel's experience makes them well-suited to litigate this case and to have negotiated the best possible resolution.  This factor weighs in favor of approval.

### 4.  *Complexity and duration of the litigation*

Prior to agreeing on settlement terms in this case, the parties exchanged a substantial amount of discovery, including extensive electronic payroll records for the Plaintiffs and Settlement Class Members, held multiple pre-mediation conference calls, prepared and exchanged mediation statements, and participated in a full day in-person mediation. This case also involved complex issues including whether the FLSA applied to Settlement Class Members, and whether collective action under the FLSA and class action under the PMWA was available. In short, this case was

---

[8]     Settlement Class Members will receive an average recovery of approximately $3,096.69, with the maximum recovery being $29,542.65.  [ECF 44-1 at 9].

complex, and the litigation was neither quick nor easy.  Consequently, this factor weighs in favor of approval.

### 5.   Risk of nonpayment

Class Counsel took this case on a contingent fee basis, and commenced working on this case in 2015 without any compensation, and with the risk of not receiving compensation or reimbursement for expenses unless successful.  Class Counsel was prepared to invest time and resources into this case over a period of years if necessary to see this case through trial.  Thus, this factor weighs in favor of approval.

### 6.   Amount of time devoted to the case by counsel

As of September 19, 2016, Class Counsel spent 499.7 hours litigating this case.  As of that date, the attorneys' fees accrued totaled $222,187.30.  (Schalman-Bergen Decl. ¶¶ 22, 27; Hancock Decl. ¶ 6).[9]  Undisputedly, a reasonable amount of hours was spent in preparing, litigating, and ultimately resolving a case of this complexity.  Consequently, this Court finds that the amount of time devoted to this case weighs in favor of approval.  *Cf. Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 WL 1213926, at *12 (E.D. Pa. May 19, 2005) (finding that the time devoted factor weighed against approval where the 17,000 hours of attorney work did not justify fees in the amount of approximately $20 million).

### 7.   Awards in similar cases

The Third Circuit has noted that fee awards in POR cases generally range from 19% to 45%.  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995).  An award of approximately one-third of the common fund as an attorney's fee to class

---

[9]   Since that date, additional expenses were incurred when Class Counsel prepared for and attended the September 27, 2016 hearing.  Class Counsel, however, did not estimate any additional hours to prepare for and attend the September 27, 2016 hearing, and did not submit any additional documentation identifying the additional hours expended.

counsel is common in FLSA class action settlements. *Mabry v. Hildebrandt*, 2015 WL 5025810, at

*4 (E.D. Pa. Aug. 24, 2015) (collecting cases). This factor weighs in favor of approval.

> 8. *Value of benefits attributable to the efforts of class counsel relative to the efforts of others*

Class Counsel were the only ones investigating the claims at issue in this case. This factor

weighs in favor of approval.

> 9. *Percentage fee that would have been negotiated*

Class Counsel agreed to litigate this case on a contingent fee basis, and now seeks approval

of the contingent fee agreed to when this matter was initiated. This factor supports approval.

> 10. *Innovative Terms of the Settlement*

The settlement agreement does not contain any innovative terms. This factor is neutral as it

neither weighs in favor of nor against approval.

**Lodestar Cross-Check**

As noted, in percentage-of-recovery cases such as this one, the lodestar method is sometimes

used to "cross-check the reasonableness of a percentage-of-recovery fee award." *Sullivan*, 667 F.3d

at 330. Under the lodestar method, a court begins the process of determining the reasonable fee by

calculating the "lodestar;" *i.e.*, the "number of hours reasonably expended on the litigation

multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, (1983); *see also*

*McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009). Once the lodestar is determined, the

court must then determine whether additional adjustments are appropriate. *McKenna*, 582 F.3d at

455.

A reasonable hourly rate in the lodestar calculation is "[g]enerally . . . calculated according

to the prevailing market rates in the relevant community," taking into account "the experience and

skill of the . . . attorney and compar[ing] their rates to the rates prevailing in the community for

similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). The prevailing market rate is usually deemed reasonable. *Pub. Interest Research Grp. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).

As revealed in the Schalman-Bergen and Hancock Declarations, the hourly rates for Class Counsel are well within the range of what is reasonable and appropriate in this market. That is, the hourly charged rates for the attorneys are the same as the regular current rates charged for their services in standard non-class matters, including contingent and non-contingent matters. The attorneys have substantial experience in FLSA cases, and their hourly rates are also within the range charged by attorneys with comparable experience levels for litigation of a similar nature. *See, e.g.*, *Barel v. Bank of Am.*, 255 F.R.D. 393, 403-04 (E.D. Pa. 2009).

"In calculating the second part of the lodestar determination, the *time* reasonably expended," a district court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Pa. Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998). As noted in *Hensley*, lawyers are required to use judgment when billing their clients so as not to bill clients for "excessive, redundant, or otherwise unnecessary" hours. *Id*. at 434. Likewise, "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id*. at 434 (citations omitted). Ultimately, district courts have "substantial discretion in determining what constitutes . . . reasonable hours." *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).

In the Schalman-Bergen and Hancock Declarations, Class Counsel included a summary of the hours worked by the partners, associates, and professional support staff involved in this litigation. These summaries were prepared from contemporaneous, daily time records regularly

prepared and maintained by the respective firms.  Class Counsel and support staff are claiming 499.7 hours for work done at an average hourly rate of approximately $445.[10]  After reviewing the Schalman-Bergen and Hancock Declarations, it appears that Class Counsel is not requesting compensation for any time that was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Having found the hourly rates and hours expended reasonable, the lodestar for Class Counsel is, as of September 19, 2016, $222,187.30, for 499.7 hours of attorney and support staff work.  Class Counsel also submitted documentation showing reasonable expenses, as of September 19, 2016, totaling $8,813.40, and requests an award of these costs. Class Counsel's request for $516,667.00 in fees represents a multiplier of approximately 2.32 of the lodestar amount as of September 19, 2016.  Multiples ranging from 1 to 4 are often used in common fund cases.  *In re Prudential*, 148 F.3d at 341; *see also Keller v. TD Bank, N.A.*, 2014 WL 5591033, at *16 (E.D. Pa. Nov. 4, 2014) (approving multiplier of "slightly above 3" in FLSA collective action).  This Court has also considered the fact that Class Counsel took this matter on a contingent basis, *see Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973), there were no objections to the amounts requested by any Settlement Class Members, *see Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 124 (E.D. Pa. 2005), and that through the settlement, Class Counsel has obtained for the Settlement Class Members a significant recovery. Therefore, the lodestar cross-check supports approval of the requested attorneys' fees.

Having considered the relevant factors and the lodestar cross-check, this Court approves the request for attorneys' fees, as well as Class Counsel's costs, which the Court finds to be reasonable.

---

[10]     The hourly rates ranged from $175 per hour to $775 per hour.

**Individual Settlement Awards and Settlement Administrator Costs**

Class Counsel also seek approval of $7,500.00 individual settlement awards to Plaintiff Maria Devlin and Plaintiff Julie Thumm for their willingness to undertake the risks and the burden of this litigation, and $1,000.00 individual settlement awards to Opt-In Plaintiffs Jason Eisenberg, Michael Hagan, and Jennifer Wynne for their role in prosecuting this litigation. "Incentive awards are not uncommon in class action litigation. . . ." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). These payments "compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of class action litigation.'" *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011). Incentive awards also "'reward the public service' of contributing to the enforcement of mandatory laws." *Id*. (quoting *In re Cendant*, 232 F. Supp. 2d at 344).

This Court recognizes that there would be no benefit to Settlement Class Members if Plaintiffs and Opt-In Plaintiffs had not stepped forward and prosecuted this matter to the current resolution. In doing so, these individuals devoted time and energy to the litigation, including assisting with discovery and at the mediation. The requested awards are well within the range of awards made in similar cases. *See Barel*, 255 F.R.D. at 402-03 (awarding $10,000.00 individual award); *McGee v. Continental Tire North Am., Inc.*, 2009 WL 539893, at *18 (D.N.J. Mar. 4, 2009) (awarding $3,500.00 individual award). Settlement Class Members were notified that Class Counsel would request these individual awards for Plaintiffs and Opt-In Plaintiffs, and no Settlement Class Members objected. Accordingly, this Court approves the individual awards of $7,500.00 each to Plaintiff Maria Devlin and Plaintiff Julie Thumm, and the individual awards of $1,000.00 each to Opt-In Plaintiffs Jason Eisenberg, Michael Hagan, and Jennifer Wynne.

Likewise, this Court concludes that the Settlement Administrator's costs in administering the Class Notice and the settlement on an ongoing basis, not to exceed $17,500.00, are fair and reasonable.  Accordingly, this Court approves the Settlement Administrator's costs not to exceed $17,500.00.

**CONCLUSION**

For the reasons stated herein, this Court grants final approval of the proposed class action settlement, awards Class Counsel reasonable attorneys' fees in the amount of $516,667.00 and reimbursement of expenses in the amount of $8,813.40, awards Plaintiffs Maria Devlin and Julie Thumm each $7,500.00, awards Opt-In Plaintiffs Jason Eisenberg, Michael Hagan, and Jennifer Wynne each $1,000.00, and awards The Angeion Group, LLC its costs not to exceed $17,500.00. An Order consistent with this Memorandum Opinion follows.


NITZA I. QUIÑONES ALEJANDRO
*Judge, United States District Court*